United States District Court
Southern District of Texas
**ENTERED**
March 31, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MOHAMMAD SALIM, | § | CIVIL ACTION NO |
| Plaintiff, | § | 4:21-cv-04142 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| MOUNTAIN EXPRESS | § | |
| OIL COMPANY, | § | |
| Defendant. | § | |

**OPINION AND ORDER
GRANTING MOTION TO DISMISS**

The motion to dismiss by Defendant Mountain Express Oil Company is granted. Dkt 30. This action is dismissed without prejudice for lack of subject-matter jurisdiction.

1. Background

Plaintiff Mohammad Salim and Defendant Mountain Express Oil Company entered into a real estate sale and purchase contract in May 2021. The contract concerned eight convenience stores and gas stations (along with a commercial lease agreement for a ninth) located primarily in Houston, Texas. Dkt 9 at ¶ 12. Salim believes that Mountain Express failed to deliver insurance, title and survey, and licenses necessary for operating the businesses as required by their agreement. Id at ¶ 31. He thus filed this action for breach of contract and fraud in the federal courts of Houston, seeking specific performance and damages. Id at ¶¶ 61–70.

Mountain Express is indisputably a Georgia corporation. Salim argues that diversity jurisdiction thus exists because, he says, he's a domiciliary of New Mexico. Id at ¶¶ 4–5. Mountain Express moved to dismiss for lack

of subject-matter jurisdiction, arguing that Salim's residence is—and has long been—in Georgia. Dkt 6 at ¶ 2. In particular, Mountain Express points out that Salim had himself represented in multiple agreements signed in April and May of 2021 that he lived in Georgia. Dkt 30 at ¶ 11.

Jurisdictional discovery was allowed on this issue. Dkt 28 at 1–2. Mountain Express then filed an amended motion to dismiss, maintaining its contention that Salim is domiciled not in New Mexico, but in Georgia—just like he had represented when entering into their agreement. Dkt 30 at ¶ 1.

The jurisdictional evidence is summarized where pertinent below. Of note, in 2017, Salim purchased Diamond Jubilee, a convenience store and gas station chain of twenty stores, eighteen of which are in New Mexico. Dkt 30-2 at 11. The main point of inquiry is whether he also had relocated and was domiciled in New Mexico when he brought this action in December 2021—having represented in April and May that same year that he was still a resident of Georgia.

### 2. Legal standard

Subject-matter jurisdiction is inherently a threshold matter. *Steel Co v Citizens for a Better Environment*, 523 US 83, 94–95 (1998), quoting *Mansfield, Coldwater & Lake Michigan Railway Co v Swan*, 111 US 379, 382 (1884). This is because federal courts are ones of limited jurisdiction. *Howery v Allstate Insurance Co*, 243 F3d 912, 916 (5th Cir 2001), citing *Kokkonen v Guardian Life Insurance Co of America*, 511 US 375, 377 (1994). A decision to hear a case that's beyond the subject-matter jurisdiction of a federal court isn't a "mere technical violation," but is instead "an unconstitutional usurpation" of power. Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 3522 (West 3d ed April 2022 update).

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of an action for lack

of subject-matter jurisdiction. Consideration of a motion under Rule 12(b)(1) isn't limited simply to the facts pleaded in the complaint, but may instead include any evidence submitted by the parties, such as affidavits, testimony, and documents. *Kasali v FBI,* 2017 WL 6343654, \*2 (SD Tex 2017); *Paterson v Weinberger,* 644 F2d 521, 523 (5th Cir 1981). Discretion also exists to weigh any competing evidence based on credibility assessments. *Williamson v Tucker,* 645 F2d 404, 413 (5th Cir 1981) (citation omitted). This means that dismissal for lack of subject-matter jurisdiction may proceed based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ibid.

Dismissal is appropriate "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re Federal Emergency Management Agency Trailer Formaldehyde Products Liability Litigation*, 668 F3d 281, 286 (5th Cir 2012), quoting *Home Builders Association Inc v City of Madison*, 143 F3d 1006, 1010 (5th Cir 1998) (internal quotations omitted). The burden is on the party asserting jurisdiction to establish by a preponderance of the evidence that it is proper. *New Orleans & Gulf Coast Railway Co v Barrois*, 533 F3d 321, 327 (5th Cir 2008). Indeed, a presumption against subject matter jurisdiction exists that "must be rebutted by the party bringing an action to federal court." *Coury v Prot*, 85 F3d 244, 248 (5th Cir 1996).

3. Analysis

Section 1332(a)(1) of Title 28 provides, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states."

The parties don't dispute that the amount in controversy exceeds the jurisdictional threshold. They

3

dispute only the citizenship requirement, under which each plaintiff must have a different domicile from that of each defendant. *Freeman v Northwest Acceptance Corp,* 754 F2d 553, 555 (5th Cir 1985).

As to Mountain Express, the analysis is simple. Corporations are "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 USC § 1332(c)(1). The parties agree that Mountain Express is a citizen of Georgia under such standards. Dkt 31 at 1–2.

As to Salim, the analysis is quite a bit more complicated. For individuals, "citizenship has the same meaning as domicile." *MidCap Media Finance LLC v Pathway Data Inc*, 929 F3d 310, 313 (5th Cir 2019) (quotation marks and citation omitted). *Domicile* is determined by reference to a variety of factors, including where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has a driver's license, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family. *Coury v Prot,* 85 F3d 244, 251 (5th Cir 1996). Domicile must be evaluated as of the commencement of the lawsuit. See *Ray v Bird & Son & Asset Realization Co,* 519 F2d 1081, 1082 (5th Cir 1975); see also *Mollan v Torrance,* 22 US 537, 539 (1824). But there's no durational residence requirement—a new domicile is instantaneous once it's established. *Acridge v Evangelical Lutheran Good Samaritan Society,* 334 F3d 444, 448 (5th Cir 2003). Even so, to establish a change in domicile requires proof of both a change in residence and an intention to remain in the new location indefinitely; otherwise, a presumption of continuing domicile abides even if a person relocates. Ibid.

Salim brought this action in December 2021. That is the point in time at which domicile here must be evaluated. Still, his residential history bears close scrutiny. And in that respect, it's undisputed that Salim and his family have a long and continuing connection to Georgia.

4

Mohammed and his wife have been married since 1990. Dkt 30-3 at 9. In 1998, they bought a summer house in her name in Stone Mountain, Georgia. Id at 9, 11. In 2009, they purchased another home in her name in Lilburn, Georgia. Id at 7. It's also undisputed that Salim's wife without question remains domiciled in Georgia, living in the Lilburn home with the couple's 31-year-old autistic son. Ibid. Indeed, she testified that she and Salim are both "back and forth" between Georgia and New Mexico. Id at 14. But she has no immediate plans to move to New Mexico because she has to care for their son and have him close to his doctors and support. Dkts 30-2 at 11–12 & 30-3 at 13.

As noted from the outset, Salim apparently invests in businesses outside of Georgia. The underlying dispute here concerns the purchase and lease in May 2021 of a number of convenience stores and gas stations in Houston. But in 2017, he'd purchased the Diamond Jubilee chain of convenience stores and gas stations, with eighteen of twenty being in New Mexico. With respect to that chain, the Salims have another son who dropped out of college in Georgia and moved to New Mexico to help run the new business. Dkt 30-2 at 13–14. That son purchased a home in New Mexico with money from Diamond Jubilee. Id at 17. And it is this home where Salim lives when he's in New Mexico. Id at 10.

To be clear, then, Salim doesn't personally own a home of his own in either Georgia or New Mexico—or at least, none are in his own name. Dkt 30-1 at 6. The same appears to be true as to automobiles. His wife's car was purchased in 2014 under her name and is registered in Georgia. Dkt 30-3 at 10. And when in New Mexico, Salim drives an Infiniti owned by Diamond Jubilee. Dkt 30-2 at 17–18. Curiously, though, his response brief elsewhere admits without detail or explanation that he "still owns property in Georgia." Dkt 31 at ¶ 13.

In light of the above, the presumption here in favor of finding continuing domicile in Georgia remains quite strong. See *Acridge*, 334 F3d 444, 448 (5th Cir 2003). To

5

meet his burden, Salim submits evidence that he registered to vote and obtained a driver's license in New Mexico in November of 2021, a few weeks before he filed suit. Dkts 23-4 & 23-5. He also provides evidence of a W-2 and a 1099-NEC in New Mexico from Diamond Jubilee for 2021. Dkts 23-8 & 23-9. But far from sufficient, these appear merely expedient. For example, in *Hendry v Masonite Corp*, the Fifth Circuit held that proof of voting one time in a new jurisdiction isn't enough to establish a change in domicile. 455 F2d 955, 956 (5th Cir 1972). At best, that's what Salim offers in this respect. For Mountain Express submits evidence that Salim registered to vote in Georgia in October of 2020 (using one of his Georgia business addresses, rather than even his wife's address), thus proving that any registration in New Mexico is a one-off event. See Dkt 6-12.

Salim also sponsors his own unsworn declaration of his intent to remain in New Mexico. Dkt 23-10. The problem, however, is one of credibility. Simply put, Salim has none. For instance, in answer to an interrogatory, he stated that the only company he worked for in the past five years is Diamond Jubilee—despite Mountain Express offering evidence in its initial motion to dismiss that Salim is the registered agent for Modern Modern LLC, a Georgia company that became effective on January 28, 2020. Dkts 30-1 at 5, 6 at ¶ 7 (motion to dismiss) & 6-7. Salim doesn't challenge that ownership interest in his response, but instead seeks to affirm only that he was "indeed" domiciled in Georgia in early 2021 and times prior. Dkts 8 at ¶ 8 & 31 at ¶ 12. Be that as it may, it doesn't explain his dishonest answer to an interrogatory.

His credibility must also be considered in light of his flat representations to Mountain Express in April and May of 2021 (as they negotiated and closed their deal) that he was a resident of Georgia. Dkt 30 at ¶ 11. That constrains him quite a bit, leaving him room only to argue that he (by miraculous coincidence, he'd say) transformed his domicile to New Mexico in November 2021—the month before he filed this suit—whereas he'd done no such thing in all the

6

time since 2017 when he purchased Diamond Jubilee. It strains credulity. Indeed, it's expedient nonsense.

Further impacting Salim's credibility is what he *doesn't* say. And that is, Salim doesn't say that his family is fractured or that he somehow has no close, sustained, familial connection to Georgia. His wife and autistic son indisputably still reside only there, with no immediate plan in place to relocate to New Mexico. Dkts 30-3 at 13 & 30-2 at 12. The record even as to Salim's other son is less than clear. He initially stated in his deposition that he lives in Georgia with his mother and brother and has since 2009. Dkt 30-2 at 9. But he later recanted, saying instead that since 2017 he has traveled "back and forth" and lives both in Georgia with his mother and New Mexico with Salim. Id at 9–11. All of this means that Salim has in no way established that he maintains a home for his family in New Mexico. *Coury v Prot*, 85 F3d 244, 251 (5th Cir 1996).

Also important is what evidence *isn't* offered. For instance, Salim sponsors no evidence of any local involvement (such as bank accounts or membership in clubs, churches, or similar congregations) that could show he participated in community life in New Mexico beyond simply owning a business. See *Coury*, 85 F3d at 251. Even to the extent he offers proof of mail sent to him at the New Mexico address, he fails to include the date of when the mail was sent or received. See Dkt 23-6. And while he also submits a utility bill dated the February after he filed suit, he doesn't offer any bills from 2021 to evidence usage between the time he claimed to have changed his domicile and when he filed suit. Dkt 23-7.

At the end of the day, the curious fashion in which Salim organizes his private life—with major assets being in the name of family members other than himself—suggests that he proceeds with the consequences of business litigation in mind. But to the extent that might make him what's colloquially known as *judgment proof* in his personal capacity, it undermines his ability to readily demonstrate where he lives or whether he's relocated permanently. See *Coury,* 85 F3d at 251 (finding declaration

of intent to remain in new location to carry little weight where it conflicts with other, objective facts).

The Supreme Court long ago observed that "mere absence from a fixed home, however long continued," doesn't constitute a change of domicile. *Mitchell v United States*, 88 US 350, 353 (1874). Ultimately, that's all that Salim potentially establishes here—absence at some times from a clearly fixed home in Georgia. Indeed, from the record presented, a significant question persists as to whether *anyone* in the Salim family has permanently relocated to New Mexico with an intention to indefinitely remain there.

The decision by the Fifth Circuit in *Hendry v Masonite Corp* thus informs the ultimate conclusion here. See 455 F2d 955 (5th Cir 1972). The litigant there was domiciled in Mississippi and moved to Illinois for work, bringing most of his clothes and personal belongings with him. His family came up to visit him to search for a home to purchase and even made concrete plans to move to Illinois with him later that year. Even so, the Fifth Circuit found mere *intent* to be domiciled in Illinois—rather than an actual *change* of domicile, as was his burden. Merely spending "working time" in a new location wasn't enough to show change in domicile, and at the time of the suit's filing, his family remained behind in their Mississippi home. *Hendry,* 455 F2d at 956.

So, too, here. Salim bought a business in New Mexico and is no doubt frequently there to oversee it. Dkts 30-1 at 5 & 30-3 at 14. Salim's wife claims to have future plans to move out to New Mexico with him. But she and at least one of their sons remained in their Georgia home at the time Salim filed suit, along with most of her belongings. Dkt 30-3 at 13–14. Salim may have the *intention* of being domiciled in New Mexico at some point, but he fails to meet his burden of showing that he has already *actually established* a domicile there. Id at 13.

8

4. Conclusion

The motion by Defendant Mountain Express Oil Company to dismiss this action for lack of subject-matter jurisdiction is GRANTED. Dkt 30.

This action is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Signed on March 31, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge